IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–00638–EWN–CBS


GRAYMORE, LLC, a Colorado limited
liability company,

      Plaintiff,

v.

CHESTER GRAY,

      Defendant.

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

      This case involves tort, fraud, and breach of contract claims arising from Defendant

Chester Gray's alleged efforts to interfere with the registration and/or redemption of certain pre-

World War II German gold bearer bonds purportedly owned by Plaintiff GrayMore, LLC and

valued by Plaintiff at over two billion dollars.  This matter is before the court on "Defendant

Chester Gray's Motion to Dismiss" for lack of personal jurisdiction, improper venue, and

insufficiency of service of process, filed September 8, 2006.  Jurisdiction is premised upon

diversity, 28 U.S.C. § 1332 (2006).

**FACTUAL BACKGROUND**

*1.     Facts*

The following facts are taken from Plaintiff's complaints and the parties' submissions with

respect to this Order and Memorandum of Decision.   Plaintiff is a Colorado limited liability

company ("LLC") with its principal place of business in Arapahoe County, Colorado.   (Verified

Compl. for Temp. and Permanent Inj. ¶ 1 [filed Apr. 6, 2006] [hereinafter "Compl."].)   Defendant

is an individual and United States citizen whose last known United States residence was a hotel in

Los Angeles, California and who has been outside the United States since June 2004.   (*Id.* ¶ 2.)

From 1988 through January 2004, Defendant and Alfred Moresi had many communications and

meetings about joining forces to redeem certain gold bonds issued by the German government

before World War II (hereinafter the "Bonds") that they each owned.   (Second Verified Mot. for

TRO and Prelim. Inj., with Authorities ¶ 6 [filed Apr. 7, 2006] [hereinafter "Am. Compl."].)

Moresi, while in Colorado, allegedly had numerous telephone conversations and exchanged faxes

with Defendant while he was out-of-state about the possibility of forming a jointly owned

company.   (Pl.'s Resp. Opposing Mot. to Dismiss, Ex. 2 ¶ 12 [Moresi Aff.] [filed Sept. 22, 2006]

[hereinafter "Pl.'s Resp."].)   Moresi and Defendant also met personally on several occasions to

discuss this same topic, but none of these meetings took place in Colorado.   (*Id.*, Ex. 2 ¶ 13

[Moresi Aff.].)

It appears that there is some dispute in Germany as to whether the Bonds are valid

obligations of the German government.   (*See* Am. Compl. ¶ 10.)   In June 1993, Defendant

submitted a registration application for his Bonds (hereinafter the "Registrations") to the

Restitution Act Office in Berlin, Germany.  (Compl. ¶ 12.)  In September 1998, Defendant gave a German attorney, Ludwig Malz, Defendant's power of attorney to help with and clarify any issues created by the Registrations.  (*Id.* ¶ 13.)

In January 2004, Defendant and Moresi formed Plaintiff as its only two members.  (*Id.* ¶ 9; Am. Compl. ¶ 2.)  The purpose of Plaintiff was to hold the Bonds, pursue the Registrations, and to ultimately redeem, transfer, convert, or sell the Bonds.  (Compl. ¶ 15; Am. Compl. ¶ 8.)  To achieve Plaintiff's purpose, Defendant and Moresi agreed to: (1) transfer to Plaintiff all of the Bonds and all of Defendant's rights in the Registrations; (2) use Plaintiff to pursue redemption of the Bonds; and (3) have Moresi take the lead in these activities and give him authority to direct Plaintiff's day-to-day activities as its Managing Member.  (Compl. ¶ 16.)  Defendant transferred all of his right, title, and interest in the Bonds and Registrations to Plaintiff in compliance with Plaintiff's Operating Agreement, which Defendant and Moresi executed, ratified, and adopted in California on February 20, 2004.  (*Id.* ¶ 17, Ex. 4 at 27 [Operating Agreement], Ex. 5 [Organization Meeting Minutes].)

Under the terms of Plaintiff's Operating Agreement and Organization Meeting Minutes, Defendant and Moresi agreed as follows: (1) Defendant would be the "Initial Consulting Manager," who would serve until February 28, 2006; (2) Moresi would be the "Initial Manager" for a minimum of two years, as well as President of Plaintiff and Chief Executive and Operating Officer; (3) Defendant and Moresi would transfer and contribute to Plaintiff from their current holdings 490 Bonds free of encumbrance and all their rights to approximately 1,600 Bonds that were subject to liens and other encumbrances with third parties; (4) Defendant and Moresi would

transfer and contribute to Plaintiff "total and complete rights" to the Registrations; and (5)

Defendant and Moresi's rights as members as well as the Operating Agreement would be

governed by Colorado law.  (Compl. ¶¶ 16, 18, Ex. 4 at 12, 18–20 [Operating Agreement], Ex. 5

[Organization Meeting Minutes].)  The Operating Agreement further states:

> the Initial Manager, and thereafter the Managers shall have, except as specifically
> limited in this Agreement, full and exclusive authority in the management and
> control of the Company, and shall have all the rights and powers which are
> otherwise conferred by law or are necessary or advisable for the discharge of their
> duties and the management of the business and affairs of the Company.

(*Id.*, Ex. 4 at 18–19 [Operating Agreement].)   Further, managers agree not to:

> (a) do any act in contravention of this Agreement;
> (b) do any act which would make it impossible to carry on the ordinary business of
> the Company, except as expressly provided in this Agreement;
> . . .
> (e) assign rights in specific Company property for other than a Company purpose

(*Id.*, Ex. 4 at 19–20 [Operating Agreement].)

### a.     *Defendant's Alleged Actions as a Manager of Plaintiff*

After the creation of Plaintiff, Defendant and Moresi worked with Plaintiff's Colorado

securities attorney to create a Private Placement Memorandum, Subscription Agreement, and

business plan.  (Am. Compl. ¶ 17.)  Defendant then used these documents to seek potential

investors in Plaintiff.  (*Id.*)  Defendant also located additional Bonds for Plaintiff and introduced

Moresi to individuals and companies in Europe who held Bonds that Defendant represented he

had used as security for loans.  (*Id.*)  Defendant caused Plaintiff to pay him over $100,000 as

compensation for Defendant's services as a manager — namely, finding new members or

investors, locating additional Bonds, and pursuing the Registrations.  (*Id.*)  Plaintiff does not

assert Defendant was in Colorado when he engaged in any of these activities.

> b.      ***Defendant's Allegedly Tortious Acts Affecting Plaintiff in Colorado***

According to Plaintiff, in January 2004, when Defendant provided information about his

ownership of the Bonds, he misrepresented that he owned all of the Bonds he purported to

transfer to Plaintiff, when, in fact, Defendant had sold many of the Bonds he said were

encumbered only by liens.  (Am. Compl. ¶ 18.)  Plaintiff relied on Defendant's misrepresentations

to create the Private Placement Memorandum, Subscription Agreement, and business plan.  (*Id.*)

These alleged misrepresentations subjected Plaintiff to potential liability for securities fraud and

other claims.  (*Id.*)

Also, since conveying to Plaintiff all of his right, title, and interest in the Bonds and

Registrations, Defendant has allegedly asserted that he still holds right, title, and interest in the

Bonds and Registrations.  (Compl. ¶ 34.)  In or around August 2004, Defendant allegedly stole

420 Bonds that belong to Plaintiff from two safety deposit boxes in Switzerland and sold them to

third parties.  (Am. Compl. ¶ 20.)

> 2.      ***Procedural History***

On April 6, 2006, Plaintiff filed a verified complaint in this court for an *ex parte* permanent

or temporary injunction to prevent Defendant from taking any actions that may interfere with

Plaintiff's right, title, and interest in the Bonds and Registrations.  (Compl.)  Plaintiff also asserted

claims for breach of express and implied contract, promissory estoppel, conversion, fraud, and

fraudulent concealment.  (*Id.* ¶¶ 44–66.)  That same day, this court denied Plaintiff's motion for a

restraining order, in part, because Plaintiff failed to show a likelihood of immediate and irreparable

injury, loss, or damage absent an injunction.  (Order Denying Mot. for TRO [filed Apr. 6, 2006].)

In this order, the court questioned whether it could assert personal jurisdiction over Defendant

and whether venue was proper.  (*Id.* at 3.)  On April 7, 2006, Plaintiff filed a second verified

motion for an *ex parte* temporary restraining order in an attempt to correct the previous motion's

flaws.  (Am. Compl.)  On April 10, 2006, I denied Plaintiff's motion because it disclosed little

information that, in the exercise of due diligence, would have been unavailable at the time the first

motion was filed.  (Order Denying Second Mot. for TRO [filed Apr. 10, 2006].)

On September 8, 2006, Defendant filed a motion to dismiss, arguing: (1) the court lacks

personal jurisdiction over Defendant; (2) Colorado is not the proper venue for this action; and (3)

Plaintiff failed to properly serve Defendant.  (Def. Chester Gray's Mot. to Dismiss [filed Sept. 8,

2006] [hereinafter "Def.'s Br."].)  On September 22, 2006, Plaintiff responded to the motion.

(Pl.'s Resp.)  On October 10, 2006, Defendant replied in support of his motion.  (Def. Chester

Gray's Reply in Supp. of Mot. to Dismiss [filed Oct. 10, 2006] [hereinafter "Def.'s Reply"].)

This matter is fully briefed and ripe for review.

## ANALYSIS

### 1.     *Legal Standard*

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil

Procedure: (1) 12(b)(2) for lack of personal jurisdiction; (2) 12(b)(3) for improper venue; and (3)

12(b)(5) for insufficiency of service of process.  (Def.'s Br.)  I address only Defendant's first and

second claims.  Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to

dismiss a complaint for "lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2) (2006).

Plaintiff bears the burden of establishing personal jurisdiction over Defendants. *OMI Holdings,*

*Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of

litigation, Plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.

1995). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack

of personal jurisdiction is decided on the basis of affidavits and other written materials, Plaintiff

need only make a *prima facie* showing that jurisdiction exists. *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent

proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate

pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in

Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by

[Defendant's] affidavits.'" *Wenz*, 55 F.3d at 1505 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d

143, 145 [10th Cir. 1992]). If the parties present conflicting affidavits, all factual disputes must

be resolved in Plaintiff's favor, and "[P]laintiff's *prima facie* showing is sufficient notwithstanding

the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pled facts, as

opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident

defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*,

912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must

both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*;

*Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales,*

*Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a

defendant to personal jurisdiction for engaging in — either in person or by an agent — the

"commission of a tortious act within this state," or the "transaction of any business within this

state." Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2006). To comport with due process, a

defendant must have minimum contacts with the forum state such that maintenance of the lawsuit

would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the

"minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp.

252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to

the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI

Holdings*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

## 2.      *Evaluation of Claims*

Defendant asserts that he is not subject this court's personal jurisdiction because: (1)

Colorado's long-arm statute does not reach Defendant; (2) an exercise of personal jurisdiction

over Defendant would offend due process; and (3) personal jurisdiction is not reasonable in light

of the circumstances. (Def.'s Br. at 3–10.) Plaintiff contends that this court may assert either

general or specific jurisdiction over Defendant based on his: (1) business contacts with Colorado;

and (2) tortious actions causing injury to Plaintiff in Colorado. (Pl.'s Resp. at 5–17.) I address

each purported basis for jurisdiction below.

a.      *Personal Jurisdiction*

i.      *Personal Jurisdiction Primer*

To determine whether personal jurisdiction is proper under the Constitution, a court first looks to find minimum contacts with the forum state.  *See Int'l Shoe*, 326 U.S. at 316.  If minimum contacts are established, the court then determines whether exercise of personal jurisdiction would be reasonable.  *Id.*   The standard of reasonableness is measured by whether exercise of jurisdiction would offend "traditional notions of fair play and substantial justice."  *Id.* Whether a nonresident has the requisite minimum contacts to establish personal jurisdiction frequently involves an *ad hoc* analysis of the facts.  *Waterval v. Dist. Ct.*, 620 P.2d 5, 9 (Colo. 1980).  Although "[c]ase authority is helpful to set the boundaries for the 'minimum contacts' concept," a court "must still weigh the various factors involved in a specific set of circumstances." *Combs Airways* v. *Trans-Air Supply Co.*, 560 F. Supp. 865, 867 (D. Colo. 1983); *see also Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982) (stating that a court must evaluate the facts of each case in resolving personal jurisdiction issues).

Satisfaction of the minimum contacts and reasonableness standards may result in either general or specific jurisdiction by the court.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996); *Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1231, 1235 (D. Colo. 2000).  General jurisdiction "arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  Thus, with regard to general jurisdiction, if the defendant has a sufficient general connection with the

forum state, the defendant need not have any connection with the forum state with respect to the particular cause of action at issue. *See* BLACK'S LAW DICTIONARY 856 (7th ed. 1999). Specific jurisdiction, on the other hand, is predicated on a "defendant's minimum contacts with the forum which give rise to the cause of action." *Kennedy v. Freeman*, 919 F.2d 126, 128 n.2 (10th Cir. 1990). In other words, specific jurisdiction applies when the defendant has a certain amount of minimum contacts with the forum state and those contacts relate to the cause of action. *See* BLACK'S LAW DICTIONARY 857 (7th ed. 1999).

### ii.    *Business Contacts as a Basis for Personal Jurisdiction*

Plaintiff asserts that Defendant's business contacts with Colorado are sufficient to allow this court to exercise either general or specific jurisdiction over Defendant. (Pl.'s Resp. at 7–12, 14–17.) Acknowledging that Defendant was not physically present in Colorado at any relevant time, Plaintiff urges that the following of Defendant's alleged business contacts are sufficient to satisfy the minimum contacts test: (1) creating Plaintiff as a Colorado LLC headquartered in Colorado; (2) agreeing to be a manager of Plaintiff; and (3) taking actions as Plaintiff's manager that impacted Plaintiff in Colorado. (*Id.*) Defendant's relevant actions as a manager include: (1) working with Moresi and Plaintiff's Colorado securities attorney to create a Private Placement Memorandum, Subscription Agreement, and business plan; (2) using these documents to seek potential investors; (3) locating additional Bonds for Plaintiff to acquire; (4) introducing Moresi to Ludwig Malz, as well as individuals and companies in Europe who held Bonds that Defendant told Moresi he has used as security for loans; and (5) causing Plaintiff to pay him over $100,000 as compensation for his services as a manager. (*Id.* at 8.) Defendant contends that these contacts

are plainly insufficient to satisfy Colorado's long-arm statute or due process.  (Def.'s Br. at 4–8;

Def.'s Reply at 2–5.)  I address the potential for these business contacts to serve as a basis for

exercising general and specific jurisdiction below.

### *(1)      General Jurisdiction*

A court may exercise general jurisdiction when the defendant's business contacts with the

forum state are "continuous and systematic," but do not rise to the level of traditional notions of

presence in the forum state.  *Helicopteros*, 466 U.S. at 414–16.  The defendant's "activities

within the jurisdiction must render it foreseeable that the party should reasonably anticipate being

haled in to the forum court."  *In re Application to Enforce v. Knowles*, 87 F.3d 413, 417 (10th

Cir. 1996) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 [1980].)

"There is no bright line rule to determine what constitutes systematic and continuous contacts,"

but courts have considered, *inter alia*, "the frequency of defendant's travel to the forum state,

frequency and amount of work a defendant performed in the forum state, and whether a defendant

owned property in the forum state."  *Int'l Beauty Prods., LLC v. Beveridge*, 402 F. Supp. 2d

1261, 1272 (D. Colo. 2005) (citations omitted).  "'Because general jurisdiction is not related to

the events giving rise to the suit, courts impose a more stringent minimum contacts test . . . .'"

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (quoting *OMI Holdings*, 149

F.3d at 1091); *Schneider v. Cate*, 405 F. Supp. 2d 1254, 1260 (D. Colo. 2005) (citing

*Trierweiler*, 90 F.3d at 1543) ("The threshold of contacts necessary to support general

jurisdiction is high.").

In the instant case, Plaintiff does not deny that Defendant has never: (1) resided in Colorado; (2) visited Colorado in the last twenty-five years, save one trip unrelated to the present matter; (3) owned property in Colorado; (4) had a bank account or telephone listing in Colorado; (5) manufactured anything used or consumed in Colorado; (6) had a sales office or agent in Colorado; or (7) advertised in Colorado.  (*See* Def.'s Br. at 7–8, Ex. A [Def. Decl.]; Pl.'s Resp.) Plaintiff identifies only three business contacts of Defendant that directly involve Colorado: (1) founding Plaintiff; (2) working with a Colorado securities lawyer on documents for Plaintiff; and (3) receiving $100,000 in compensation from Plaintiff.  (Pl.'s Resp. at 7–8.)  Otherwise, Plaintiff relies on a handful of entirely out-of-state acts that Defendant took to further Plaintiff's purpose, such as locating additional Bonds for Plaintiff to acquire.  (*Id.*)  On balance, these contacts simply do not rise to the continuous and systematic level required to confer general jurisdiction over Defendant.  *See Trierweiler*, 90 F.3d at 1544 (finding no general jurisdiction when defendant: [1] owned a joint bank account in Colorado with his mother; [2] belonged to the Tenth Circuit bar; [3] had lived in Colorado for four years prior to the events at issue; [4] owned property in Colorado; [5] was a limited partner in a Colorado partnership prior to the events at issue; [6] was a member of an advisory board of a Colorado corporation; [7] often traveled to Colorado; and [8] engaged in "relatively small amounts of business" in Colorado); *cf. Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (finding the defendant company's: [1] ownership of a Colorado gas station, [2] logo displayed on the gas station; and [3] website press release boasting of its commercial presence in Colorado, taken cumulatively, raised an inference of defendant's continuous and systematic business contacts in Colorado).

### (2)   *Specific Jurisdiction*

To subject a nonresident to the specific jurisdiction of the forum state based on his

business contacts, due process is only satisfied if the litigation results from alleged injuries that

"arise out of or relate to" activities that are significant and purposefully directed by the defendant

at residents of the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Encore*

*Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1116 (D. Colo. 1999).  The defendant

must have committed some act purposefully availing himself of the privilege of conducting

activities within the forum state.  *Id.*  Contacts between the defendant and the forum state cannot

be "random," "fortuitous," or "attenuated."  *F.D.I.C. v. First Interstate Bank of Denver N.A.*, 937

F. Supp. 1461, 1468 (D. Colo. 1996).  Stated simply, specific jurisdiction is proper where a

defendant has certain minimum contacts with the forum state, these minimum contacts relate to

the cause of action, and exercise of jurisdiction would not offend fair play and traditional notions

of justice.  *See* BLACK'S LAW DICTIONARY 857 (7th ed. 1999).  Minimum contacts are satisfied in

Colorado if a nonresident defendant has transacted business within the state or committed tortious

acts within the state.  Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2006).

### (a)   *Defendant's Membership in Plaintiff*

As an initial matter, the parties dispute whether Defendant's role as one of two founding

members of Plaintiff definitively establishes sufficient minimum contacts.  (Def.'s Br. at 5–6; Pl.'s

Resp. at 8–9.)  This dispute centers on whether *Intercontinental Leasing, Inc. v. Anderson*, 410

F.2d 303 (10th Cir. 1969), is controlling precedent that resolves the issue.  (Def.'s Br. at 5–6;

Pl.'s Resp. at 8–9.)  In *Intercontinental Leasing*, the Tenth Circuit affirmed the denial of a motion

to dismiss for lack of personal jurisdiction in Kansas, thereby exercising jurisdiction over one-hundred nonresident individuals who joined a Kansas partnership as "investing partners," but who never went to Kansas and never actively participated in the partnership's management.  410 F.2d 303.  The court found their contacts were sufficient to establish personal jurisdiction in Kansas because:

> [t]hrough the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Kansas and invoked the benefits and protections of its laws to satisfy their personal economic desires.  This is enough to invoke the long-arm statute and to subject them to personal jurisdiction.

*Id.* at 305.  This holding was applied to Colorado's long-arm statute in *Resolution Trust Corp. v. Deloitte & Touche*, when the Tenth Circuit found: "Here, as in *Intercontinental Leasing*, through the instrumentality of partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Colorado and invoked the benefits and protections of its laws to satisfy their personal economic desires."[1]  822 F. Supp. 1512, 1514 (D. Colo. 1993).

Defendant contends that *Intercontinental Leasing* is inapposite because it is "predicated on the unique liability and agency structure of a simple partnership."  (Def.'s Br. at 5–6.)  In support, Defendant points to an unpublished decision from the western district of North Carolina.  (*Id.* at 6.)  In *Mountain Funding, LLC v. Blackwater Crossing, LLC*, the district court found that

---

[1] The court also found that the partnership activities satisfied the constitutional minimum-contacts test.  *Resolution Trust*, 822 F. Supp. at 1514 (citing *Intercontinental Leasing*, 410 F.2d at 305).

"[p]ersonal jurisdiction over a [LLC] does not automatically extend to its members."  No. 3:05CV513–MU, 2006 WL 1582403, at *2 (W.D.N.C. June 5, 2006).

I find *Intercontinental Leasing* is not controlling, because its "extension of jurisdiction through a partnership to nonparticipant, nonresident partners is predicated upon the unique liability and agency structure of a partnership, where general partners are both principals and agents of the partnership."  *West v. Vandenheuvel*, No. 94 C 50276, 1995 WL 360461, at *2 (N.D. Ill. June 16, 1995) (citing *Wolfson v. S & S Secs.*, 756 F. Supp. 374, 377–78 [N.D. Ill. 1991] [finding personal jurisdiction over general partners based on their liability for all obligations of the partnership]).  While general partners are jointly and severally liable for the obligations of the partnership, limited liability members are not liable in any way for such obligations, unless due to their own misconduct.  Colo. Rev. Stat. § 7–60–115 (2006), § 7–80–705 (2006).  Accordingly, *Intercontinental Leasing* is readily distinguishable from the case at bar.  Considering that LLCs expressly protect members from liability for company obligations, I find that "[p]ersonal jurisdiction over a [LLC] does not automatically extend to its members."  *Mountain Funding*, 2006 WL 1582403, at *2; *see Schaffer v. Heitner*, 433 U.S. 186, 213–14 (1977) (finding membership in a business entity is not sufficient in and of itself to confer personal jurisdiction); CARTER G. BISHOP & DANIEL S. KLEINBERGER, LIMITED LIABILITY COMPANIES: TAX AND BUSINESS LAW CURRENT THROUGH 2006 § 6.08 (2006), *available at* 1998 WL 1169401 ("[T]he fact that the forum state has jurisdiction over the foreign limited liability company does not mean that jurisdiction extends to the limited liability company's members.").

This does not end my inquiry, as I still must determine whether, considering Defendant's other alleged business contacts with Colorado, Plaintiff has pled sufficient minimum business contacts to comply with Colorado's long-arm statute and due process.

### (b)      Defendant's Other Alleged Business Contacts

Plaintiff urges that Defendant's (1) position as a founder and manager of Plaintiff, (2) receipt of compensation from Plaintiff, and (3) actions taken almost exclusively outside of Colorado in furtherance of his role as a manager of Plaintiff, are sufficient to establish Defendant's requisite minimum contacts with Colorado to allow this court to assert specific jurisdiction over Defendant.  (Pl.'s Resp. at 7–12.)  Further, Plaintiff contends Defendant purposefully availed himself of the benefits and privileges of doing business in Colorado by expressly agreeing that his and Moresi's rights as members of Plaintiff, as well as the Operating Agreement, would be governed by Colorado law.  (Pl.'s Resp. at 12.)

I have already concluded that Defendant's role as founder of a Colorado LLC does not, standing alone, suffice to establish minimum contacts.  Similarly, Plaintiff's agreement to be a manager of Plaintiff does not suffice.  The Operating Agreement and Organization Meeting Minutes establish that Defendant was the "Initial Consulting Manager" for a finite period of time, while Moresi was to be the "Initial Manager."  (Compl., Ex. 4 at 12 [Operating Agreement], Ex. 5 [Organization Meeting Minutes].)  The Operating Agreement makes clear that it is the "*Initial Manager*, and thereafter the Managers" who shall have "full and *exclusive* authority in the management and control of the Company, and shall have all the rights and powers which are otherwise conferred by law or are necessary or advisable for the discharge of their duties and

management of the business affairs of the Company." (*Id.*, Ex. 4 at 18–19 [Operating

Agreement] [emphases added].)   The implicit corollary to this delegation of duties is that the

Initial Consulting Manager did *not* have authority in the management and control of Plaintiff.

Without any delegation of authority over Plaintiff, I find Defendant's position as the Initial

Consulting Manager does not establish that he purposefully availed himself of the privileges of

conducting business in Colorado.   *See Burger King*, 471 U.S. at 472; *Encore Prods.*, 53 F. Supp.

2d at 1116.

Plaintiff relies heavily on *Assist Stock Management, LLC v. Rosheim*, 753 A.2d 974 (Del.

Ch. 2000) to support its contention that Defendant's position as Initial Consulting Manager was a

sufficient basis upon which to assert jurisdiction.   (Pl.'s Resp. at 10–11.)   The *Rosheim* court

found that "[w]hen [the nonresident defendant] became a manager of a Delaware LLC, [he]

impliedly consented to being sued in a Delaware court to adjudicate disputes so inherently

intertwined with that fiduciary position."   753 A.2d at 981.   In so concluding, the court reasoned

that it did not offend traditional notions of fair play and substantial justice to require a nonresident

defendant to defend a dispute in Delaware because: (1) the allegations against the defendant

focused on his rights, duties, and obligations as a manager of a Delaware LLC; (2) the resolution

of the plaintiff's claims was "inextricably bound up in Delaware law;" and (3) Delaware had a

strong interest in providing a forum for managers of a LLC formed under its laws to resolve

disputes.   *Id.*   Although at first glance, *Rosheim* may appear to be on point, this court finds an

important distinguishing fact.   The defendant in *Rosheim* was one of two members of the Board

of Managers, which required unanimity of its members to act and retained broad control over the

company's affairs.  *Id.* at 976.  Thus, the nature of the defendant's managerial role inextricably linked him to every action taken by the LLC.  In contrast, Defendant's role as Initial Consulting Manager in the instant case rendered his linkage to company actions significantly more attenuated, and — I find — insufficient to meet the minimum contacts test.

Next, I address Plaintiff's contention that Defendant's alleged actions as a manager were sufficient to establish the requisite minimum business contacts.  According to Plaintiff, Defendant's relevant actions include: (1) working with Moresi and Plaintiff's Colorado securities attorney to create a Private Placement Memorandum, Subscription Agreement, and business plan; (2) using these documents to seek potential investors; (3) locating additional Bonds for Plaintiff to acquire; (4) introducing Moresi to Ludwig Malz, as well as individuals and companies in Europe who held Bonds that Defendant told Moresi he has used as security for loans; and (5) causing Plaintiff to pay him over $100,000 as compensation for his services as manager.  (Pl.'s Resp. at 8.)  As an initial matter, I find that Defendant's use of documents created in Colorado to seek potential investors outside of Colorado is patently insufficient to establish *any* contact of legal significance with the state.  Plaintiff has failed to point to any caselaw contradicting the common sense conclusion that reliance on documents created in Colorado is not akin to purposefully directing activities toward Colorado.  (*See* Pl.'s Resp.)  Second, it is highly doubtful that Defendant's entirely out-of-state actions intended to further Plaintiff's purpose — such as introducing Moresi to Malz and locating additional Bonds for Plaintiff to acquire — could serve as a basis for establishing minimum contacts.

-18-

Regardless, I find Plaintiff's claims neither "arise out of or relate to" these alleged contacts. *See Burger King*, 471 U.S. at 472 (finding specific jurisdiction is only appropriate if "the litigation results from alleged injuries that 'arise out of or relate to [the alleged business contacts]'"). Plaintiff does not even articulate a way in which this court could find that the conversion, fraud, and breach of contract claims stem from the alleged business contacts listed above.[2] (*See* Pl.'s Resp.) Plaintiff's reliance on *Knowles*, 87 F.3d at 418, is simply misplaced. (Pl.'s Resp. at 11.) There, the Tenth Circuit found a foreign defendant had sufficient minimum contacts based — in part — on his being a "primary participant" in the corporate activities that were at the basis of the court's jurisdiction over the corporation. 87 F.3d at 418. No such corporate activities are alleged here. (*See* Pl.'s Resp.) The above alleged business contacts clearly do not relate to Plaintiff's claims, and, thus, cannot serve as a basis for this court's assertion of specific jurisdiction. *See Burger King*, 471 U.S. at 472.

Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims, however, raise a unique issue. Although these claims also do not arise from or relate to the business contacts noted above, Moresi, while in Colorado, allegedly had numerous phone calls and fax exchanges with Defendant regarding establishing Plaintiff and/or Defendant's obligations and duties to Plaintiff. (*See* Pl.'s Resp., Ex. 2 ¶¶ 12–13 [Moresi Aff.].) Arguably, if the contract

---

[2] The only conceivable exception is that Defendant's position as Initial Consulting Manager of Plaintiff is arguably a basis for the present litigation, because several of Plaintiff's claims against Defendant are based on his alleged breach of his contractual duties as a manager. As stated above, however, the fact of Defendant's position as a manager and founding member of a Colorado LLC does not, standing alone, establish sufficient minimum contacts.

or implied contract at issue was negotiated in Colorado, Plaintiff's breach of contract claims may arise from or relate to Defendant's business contacts with Colorado.

A contract may provide the jurisdictional hook for specific jurisdiction. "[I]n evaluating the sufficiency of contacts pursuant to a contract, we examine the origin of the relationship, the significance of the negotiations, the execution of the contract itself, and any future obligations in Colorado by the defendant arising out of the contract." *New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 614 (Colo. Ct. App. 2003). Further, there is caselaw in this circuit supporting the notion that "if a defendant participates by telephone in contract negotiations with people in the forum state and then soon executes the agreed-on contract, he will be deemed to have transacted business in the state and be subject to its court's jurisdiction." *Ruggieri v. Gen. Well Serv., Inc.*, 535 F. Supp. 525, 532 (D. Colo. 1982) (citing *Halliburton Co. v. Texana Oil Co.*, 471 F. Supp. 1017, 1019 [D. Colo. 1979]).

In the instant case, however, assuming Defendant engaged in some phone and fax negotiations with Moresi in Colorado regarding the formation of Plaintiff, I find these contacts are insufficient to establish personal jurisdiction. Plaintiff admits that all of the personal meetings between Moresi and Defendant took place outside of Colorado — in Los Angeles, New York, Las Vegas, and other locations in the United States. (Pl.'s Resp., Ex. 2 ¶ 13 [Moresi Aff.].) Further, the Organization Meeting, with Defendant and Moresi in attendance, was held in Hollywood, California on February 20, 2004. (Compl., Ex. 5 [Organization Meeting Minutes].) That same day, and thus presumptively in that same location, Moresi and Defendant signed the Operating Agreement, the ostensible basis for Plaintiff's breach of contract claim. (See Compl.,

Ex. 4 at 27 [Operating Agreement].)  Given that execution of the contract occurred outside of

Colorado, and all personal meetings between Defendant and Plaintiff took place outside of

Colorado, I cannot find that the negotiations that took place via telephone and fax in Colorado

were significant enough to established the minimum contacts necessary to assert specific

jurisdiction over Defendant for Plaintiff's contract-related claims.  Additionally, the other factors

elucidated in *New Frontier* weigh against this court's exercise of jurisdiction.  In particular, there

is no evidence that: (1)  the origin of Plaintiff and Defendant's relationship is Colorado; or (2) the

contract would lead to extensive activities in Colorado.[3]  *See* 85 P.3d at 614.

Finally, I consider Plaintiff's argument that Defendant's agreement to have his rights as a

member of Plaintiff as well as the Operating Agreement governed by Colorado law subjects

Defendant to the jurisdiction of this court.  (Pl.'s Resp. at 12.)  A Colorado choice-of-law clause

is one factor a court should consider to weigh in favor of finding implied consent to jurisdiction.

*GCI 1985–1 Ltd. v. Murray Props. P'ship of Dallas*, 770 F. Supp. 585, 589 (D. Colo. 1991).

Standing alone, however, the clause cannot serve to subject Defendant to the jurisdiction of this

court.  *Id.* (citing *Burger King*, 471 U.S. at 481–82); *accord Shepard's McGraw–Hill, Inc. v.

Legalsoft Corp.*, 769 F. Supp. 1161, 1164 (D. Colo. 1991).  "Unlike a forum selection provision,

the clause here designates the body of law applicable in resolving the dispute, not the location for

its resolution."  *GCI 1985–1*, 770 F. Supp. at 589.  I find the clause, when considered alongside

---

[3]Although Plaintiff is headquartered in Colorado, its purpose does not suggest extensive
in-state activities.  (*See* Compl. ¶ 15; Am. Compl. ¶ 8 [noting Plaintiff's purpose was to acquire
additional Bonds, pursue the Registrations, and ultimately redeem, transfer, covert, or sell the
Bonds].)

Defendant's choice to headquarter Plaintiff in Colorado, makes my determination regarding

personal jurisdiction a close question.  Still, given that all personal negotiations regarding

establishing Plaintiff took place outside of Colorado, execution of the Operating Agreement and

the Organization Meeting took place outside of Colorado, neither Plaintiff's purpose nor the

Operating Agreement intended to give rise to extensive activity in Colorado, and Defendant's lack

of authority over Plaintiff's actions, I find Plaintiff has alleged insufficient minimum business

contacts to allow this court to exercise personal jurisdiction over Defendant.  *Id.* (finding no

personal jurisdiction over the defendant in spite of a Colorado choice-of-law clause, considering

lack of evidence that agreement was negotiated, executed, or intended to give rise to extensive

activity in Colorado).  Based on the foregoing, I find Plaintiff has failed to allege sufficient facts to

support a *prima facie* finding of the requisite business contacts to allow this court to assert

personal jurisdiction over Defendant.

                 ***iii.***       ***Tortious Acts Causing Injury in Colorado as a Basis for Personal***
                              ***Jurisdiction***

Alternatively, Plaintiff asserts Defendant subjected himself to Colorado jurisdiction by

committing torts that injured Plaintiff in Colorado.  (Pl.'s Resp. at 12–14.)  Specifically, Plaintiff

contends Defendant committed the torts of: (1) conversion by removing at least 421 Bonds that

belong to Plaintiff from safety deposit boxes and selling them or otherwise conveying them to

third parties; and (2) fraud or fraudulent concealment by falsely representing that he was in

possession and control of all of his Bonds, and that the Bonds against which there were

encumbrances still belonged to Defendant and could be obtained simply by paying off the loans

they secured.  (Compl. ¶¶ 57–65.)  Plaintiff asserts that Defendant's torts caused serious injuries

to Plaintiff, which — as a Colorado LLC operating only in Colorado — was foreseeably injured in

Colorado.  (Pl.'s Resp. at 13–14.)  Defendant contends that this court cannot assert personal

jurisdiction over Defendant for alleged tortious conduct outside of Colorado that purportedly

caused only detrimental economic impact to a Colorado resident.  (Def.'s Br. at 5–7.)

        In Colorado, minimum contacts are satisfied when: "(1) tortious conduct occurs in

Colorado; or (2) tortious conduct initiated in another state causes injury in Colorado."  *Nat'l*

*Union Fire*, 115 F. Supp. 2d at 1236; Colo. Rev. Stat. § 13–1–124(1)(a) (2006).  "Not all alleged

'injuries' that result from tortious conduct in a foreign state will trigger long-arm jurisdiction."

*Wenz*, 55 F.3d at 1507–08.  The injury itself must be felt in Colorado, and must be "direct, not

consequential or remote."  *Id* at 1508.  Further, "'when both the tortious conduct and the injury

occur in another state, the fact that plaintiff resides in Colorado and experiences some economic

consequences here is insufficient to confer jurisdiction on a Colorado court.'"  *Id.* (quoting *Amax*

*Potash Corp. v. Trans-Res., Inc.*, 817 P.2d 598, 600 (Colo. Ct. App. 1991).

### *(1)     Conversion*

         Defendant relies heavily on *Wenz v. Memery Crystal* in arguing Plaintiff's conversion

claim does not serve to establish personal jurisdiction over Defendant.  (*See* Def.'s Reply at 5–6.)

In *Wenz*, the London-based defendant allegedly induced the Colorado-based plaintiff over the

telephone to transfer funds to a London trust account, where the defendant then withdrew the

plaintiff's funds without his permission.  55 F.3d at 1505–06.  The court found no injury sufficient

to invoke Colorado's long-arm jurisdiction, explaining:

> Accepting [the plaintiff's] allegations as true, the unauthorized disbursals occurred in London and were from a London account, not a Colorado account. Accordingly, the loss or injury occurred in London where the account was located, not in Colorado.  That [the plaintiff] may be economically impacted in Colorado, simply because he lives there, is insufficient to establish personal jurisdiction . . . .

*Id.* at 1508.

*Wenz* is highly instructive with respect to Plaintiff's conversion claim.  Because Defendant allegedly took the Bonds from two safety deposit boxes in Switzerland, there can be no doubt that the alleged conversion took place outside of Colorado.  (Am. Compl. ¶ 20.)  "The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion took place." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999); *accord Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir. 1989).  Accordingly, the loss or injury here occurred in Switzerland, where the safety deposit boxes were located, not in Colorado.  It follows that any purported economic injury in Colorado due to the conversion is too indirect and remote to invoke personal jurisdiction under Colorado law.[4]  *See Wenz*, 55 F.3d at 1508; *Swiss Am. Bank*, 191 F.3d at 37 (finding because bank accounts were depleted in Antigua, injury occurred

---

[4]This court notes that *Wenz* is not wholly analogous to the instant case.  That the plaintiff in *Wenz* lived in Colorado was a unilateral choice of the plaintiff.  *See Helicopteros*, 466 U.S. at 417 (finding "unilateral activity of [the plaintiff] is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").  Here, that Plaintiff is headquartered in Colorado represents a deliberate choice by both Plaintiff and *Defendant* as the founding members.  Nonetheless, Plaintiff has pointed to no caselaw, and this court's research has revealed none, supporting a court's exercise of personal jurisdiction based on tortious conduct that neither occurred nor caused direct injury in the forum state.  (*See* Pl.'s Resp.)

there); *accord Friedr. Zoellner (N.Y.) Corp. v. Tex. Metals Co.*, 396 F.2d 300, 302–03 (2d Cir.

1968).

### *(2)   Fraud*

Torts based on misrepresentations of material fact, such as the fraud and fraudulent

concealment claims at issue in the instant case, are deemed to occur in the state in which the

misrepresentation was received. *Broadview Fin. v. Entech Mgmt. Servs. Corp.*, 859 F. Supp.

444, 448 (D. Colo. 1994); *see Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo.

1992) (finding that the alleged misrepresentation and fraud, though the conduct originated in New

York by telephone, was sufficient to constitute tortious acts within the state when received by the

plaintiff in Colorado).   Unfortunately, Plaintiff has failed inform the court as to the location where

Defendant's alleged misrepresentations were received.   (*See* Compl.; Am. Compl.; Pl.'s Resp.)

Although I recognize that Plaintiff's burden at this stage is light, this does not mean that the onus

is on the court to manufacture necessary allegations on Plaintiff's behalf.   As noted above,

although Plaintiff does allege some negotiations regarding Plaintiff took place over the telephone

while Moresi was in Colorado, Plaintiff also makes clear that all personal meetings — of which

there were apparently several — took place outside of Colorado.   (Pl.'s Resp., Ex. 2 ¶¶ 12–13

[Moresi Aff.].)   Moreover, the Organization Meeting and execution of the Operating Agreement

took place in California.   (Compl., Ex. 4 at 27 [Operating Agreement], Ex. 5 [Organization

Meeting Minutes].)   With this information before the court, even reading Plaintiff's allegations in

their most favorable light, I cannot conclude that Plaintiff has alleged sufficient facts to show that

Defendant's alleged misrepresentations were received in Colorado.   Based on the foregoing, I find

Plaintiff has failed to meet its *prima facie* burden of showing Defendant engaged in tortious conduct having effects in Colorado sufficient to trigger this state's long-arm jurisdiction.

### b.    Venue

Because I have determined that this court lacks personal jurisdiction over Defendant, I need not reach Defendant's other asserted bases for dismissal.  Nonetheless, I hold in the alternative that, as Defendant urges, even if this court did have personal jurisdiction over Defendant, venue would be improper.  (*See* Def.'s Br. at 10–11.)  Plaintiff counters that venue is proper because "a substantial part of [Defendant's] acts or omissions giving rise to [Plaintiff's] claims arise out of the consequences in Colorado of: (1) [Defendant's] authorized acts as one of [Plaintiff's m]anagers; and (2) [Defendant's] toritious acts and omissions in violation of his duties as [a m]anager."  (Pl.'s Resp. at 17–18.)

When federal jurisdiction is founded solely on diversity of citizenship, venue is proper in Colorado only if: (1) the defendant resides in Colorado; (2) a "substantial part of the events or omissions giving rise to the claim occurred" in Colorado; or (3) the defendant is subject to personal jurisdiction in Colorado *and* there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(a) (2006).  Plaintiff argues venue is proper under the statute's second basis.  Plaintiff has the burden of establishing that venue is proper in this district.[5]  *Gwynn v.*

---

[5]Plaintiff, citing *Mizokami Brothers of Arizona, Inc. v. Mobay Chemical Corp.*, 660 F.2d 712, 718 (8th Cir. 1981), asserts that "[a] defendant challenging venue must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  (Pl.'s Resp. at 17.)  I admonish Plaintiff for its misleading citation.  *Mizokami* discusses the relevant factors a court should consider in a *forum non conveniens* inquiry.  660 F.2d at 718.  *Forum non conveniens* allows a court the discretion to decline jurisdiction even when venue and jurisdiction

*TransCor Am.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998); *Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp. 2d 1165, 1172 (D. Kan. 1999). The standards for deciding a motion to dismiss for improper venue are generally the same as for deciding a motion to dismiss for want of personal jurisdiction. *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1057–58 (D. Kan. 2006). Venue may be appropriate in several different districts, "provided only that a substantial part of the events giving rise to the claim occurred there." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). "Even if a more substantial portion of the activities giving rise to the claim occurred in other districts, venue is proper if the district the plaintiff chose had a substantial connection to the claim." *Gwynn*, 26 F. Supp. 2d at 1261 (citing *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 [8th Cir. 1994]). Finally, "venue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim the 'focus [is] on relevant activities of the defendant, not the plaintiff.'" *Goff v. Hackett Stone Co.*, No. 98–7137, 1999 U.S. App. LEXIS 13351, at *4 (10th Cir. June 17, 1999) (quoting *Woodke*, 70 F.3d at 985).

In the instant case, I cannot find that a "substantial part" of the events giving rise to Plaintiff's claims occurred in Colorado. *See* 28 U.S.C. § 1391(a)(2) (2006). To support venue, Plaintiff relies on the same alleged actions by Defendant purportedly supporting this court's exercise of personal jurisdiction. (Pl.'s Resp. at 17–19.) As I found above, the only actions by Defendant directly linking him to Colorado are: (1) founding Plaintiff; (2) being a manager of

---

are proper, after considering a series of factors that are irrelevant to determining whether venue is proper. *Id.* at 717–18. *Mizokami* is, thus, wholly inapposite.

Plaintiff; (3) making some negotiations via phone and fax with Moresi in Colorado concerning

establishing Plaintiff; and (4) working with a Colorado securities attorney to create some

documents for Plaintiff.  (*See Analysis* § 2[a][ii][2][b], *supra*.)  For all of the reasons I noted in

my discussion regarding this court's lack of personal jurisdiction over Defendant, I find these

actions do not have a "close nexus to the claims," and, thus, lack the "substantiality necessary to

support venue."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433–34 (2d Cir. 2005);

*see Friedman v. Revenue Mgmt.*, 38 F.3d 668, 672 (2d Cir. 1994) (concluding that when the

events supporting a claim for dissolution of a defendant company occurred in Illinois, the fact of

defendant's incorporation in New York, its servicing of New York hospitals, its collection of

money from New York debtors, and its employment of a New York law firm did not support

venue in the Southern District of New York because the New York actions did not constitute a

substantial part of the events or omissions giving rise to plaintiff's claims).  Accordingly, I find

Plaintiff has failed plead sufficient facts to support a finding of proper venue.  Plaintiff does not

move for transfer to another district; thus, I decline to address the issue.

**3.    *Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.    Defendant's motion to dismiss (#31) is GRANTED, without prejudice, for want of

personal jurisdiction.

2.    The clerk shall forthwith enter judgment in favor of Defendant and against

Plaintiffs, dismissing the case without prejudice.  Defendant may have its costs by filing a bill of

costs within eleven days of the date on which this order is filed.

Dated this 6th day of April, 2007.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge